UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 24-CR-38 (ACR) |
| | : | |
| EMILY HERNANDEZ, | : | |
| | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA**

As set forth in the attached plea agreement, Defendant Emily Hernandez (hereinafter referred to as "Defendant" or "HERNANDEZ") agrees to accept responsibility and plead guilty to Counts One and Two of the captioned Indictment, charging Defendant with (Count One) Conspiracy to Commit Wire Fraud, in violation of Title 18 United States Code, Section 1349 and (Count Two) Conspiracy to Commit an Offense Against the United States, in violation of Title 18, United States Code, Section 371.

I.    **Elements of the Offenses**

Count One, Conspiracy to Commit Wire Fraud

The essential elements of the offense of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349 (Count One), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1)    Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18, Chapter 63, as charged in the Indictment, that is, wire fraud; and

(2) The defendant knew the unlawful purpose of the plan and willfully joined in it.

The essential elements of the offense of Wire Fraud are in violation of Title 18, United States Code, Section 1343 are:

(1) That the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature);

(2) That the defendant acted with the intent to defraud; and

(3) That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

<u>Count Two, Conspiracy to Commit an Offense Against the United States, that is Conspiracy to Commit Aggravated Identity Theft and Access Device Fraud.</u>

The essential elements of the offense of Conspiracy to Commit an Offense Against the United States, in violation of Title 18, United States Code, Section 371, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) Two or more persons agreed to do something which federal law prohibits, that is, commit the crimes aggravated identity theft and access device fraud, as charged in the Indictment;

(2) The defendant knew of the conspiracy and willfully joined the conspiracy; and

2

(3) At some time during the existence of the conspiracy or agreement, one of the members of the conspiracy knowingly performed, in the District of Columbia, or an area wholly outside of the United States, one of the overt acts charged in the Indictment in order to accomplish the object or purpose of the agreement.

The essential elements of the offense of Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A, each of which the government prove beyond a reasonable doubt to sustain a conviction, are:

(1) That the defendant knowingly transferred, possessed, or used,

(2) Without lawful authority,

(3) A means of identification of another person,

(4) During and in relation to a felony enumerated in Section 1028A(c) or Section 2332b(g)(5)(B).

The essential elements of the offense of Access Device Fraud, in violation of Title 18, United States Code, Section 1029(a)(1) are as follows:

(1) The defendant knowingly used, produced, and trafficked in a counterfeit access device;

(2) The defendant acted with intent to defraud; and

(3) The defendant's conduct in some way affected commerce between one state and other states, or between a state of the United States and a foreign country.

## II.   Statement of Facts

The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant

3

heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. These facts do not constitute all facts known to the parties concerning the charged offenses and covered conduct. This statement is being submitted by the parties to demonstrate that sufficient facts exist to establish that Defendant committed the offenses to which she is pleading guilty.

### *Overview of the Powell Conspiracy*

From at least in or around March 2021, until in or around May 2023, and at all times relevant to the conspiracy charged in Count One and Count Two of the Indictment, Carter Rohn ("Rohn"), Robert Powell ("Powell"), and other co-conspirators (hereinafter referred to collectively as "the Powell Co-conspirators") conspired with others to carry out fraudulent Subscriber Identity Module ("SIM") swap attacks in order to gain unauthorized access to online victim accounts for the purpose of unjustly enriching themselves.

A SIM card is a chip that stores information identifying and authenticating a cell phone subscriber. A SIM swap attack refers to the process of fraudulently inducing a mobile phone carrier to reassign a mobile phone number from the legitimate subscriber or user's SIM card to a SIM card controlled by the Powell Co-conspirators. The Powell Co-conspirators conducted SIM swaps for the purpose of defeating multifactor authentication and/or two-step verification.

After successfully conducting a SIM swap, the Powell Co-conspirators then initiated, received, and transmitted multifactor authentication methods, such as access device codes, in order to defeat multifactor authentication, and gain unauthorized access to victim accounts, including, but not limited to, virtual currency exchange accounts, financial institution accounts, social media accounts, and electronic communication accounts. The Powell Co-conspirators gained unauthorized access to these victim accounts for the purpose of stealing funds, data, and other personal identifying information ("PII") from those victims.

### *Defendant's Involvement in the Powell Conspiracy*

HERNANDEZ joined the Powell Conspiracy in or around October 2022, and performed SIM swaps at the direction of Powell Co-conspirators. HERNANDEZ first met members of the Powell Conspiracy, including Rohn, in the summer of 2022, and agreed to perform SIM swaps. HERNANDEZ provided members of the Powell Conspiracy with her photograph to be used on fraudulent identification cards. The fraudulent identification cards with HERNANDEZ's photograph were created and provided to HERNANDEZ by Powell Co-conspirators for the purpose of performing SIM swaps.

In or around November 2022, Powell Co-conspirators purchased a plane ticket for HERNANDEZ to travel to Utah for the purpose of performing SIM swaps in Utah with some of the Powell Co-conspirators. Shortly after arriving in Utah, HERNANDEZ traveled with some of the Powell Co-conspirators to El Paso, Texas, to perform various SIM swaps.

### *The November 11, 2022 SIM Swap*

On or about November 11, 2022, HERNANDEZ and other Powell Co-conspirators were in El Paso, Texas, conducting SIM swaps at the direction of Powell and Rohn. While in El Paso,

Powell contacted some of the Powell Co-conspirators over an encrypted messaging application and directed them to conduct a SIM swap of a "Victim-1," who was an employee of Victim Company-1, a virtual currency exchange headquartered outside of the United States. Powell informed the co-conspirators that Victim-1 was a priority because the Powell Co-conspirators would be paid double for this particular SIM swap. Powell sent the Powell Co-conspirators Victim-1's first and last name, as well as Victim-1's social security number.

Later that same day, one of the Powell Co-conspirators, using the PII for Victim-1 that Powell had provided, printed a fraudulent identification card with Victim-1's PII, but displaying HERNANDEZ's photograph. HERNANDEZ then traveled with this fraudulent identification card to a mobile service provider store located in El Paso, Texas, for the purpose of performing a SIM swap of Victim-1's account. At the mobile service provider store, HERNANDEZ presented the fraudulent identification card to a store employee and purported to be Victim-1. HERNANDEZ subsequently successfully gained access to Victim-1's account. Shortly thereafter, HERNANDEZ traveled to a nearby Apple retail store to complete the SIM swap by transferring a mobile phone number associated with Victim-1 to a physical device in the Powell Co-conspirators' control.

After completing the SIM swap of Victim-1's account, Powell Co-conspirators confirmed with Powell that the new phone was ready to receive and transmit multifactor authentication codes, including access codes to online accounts. These multifactor authentication codes allowed co-conspirators to gain unauthorized access to Victim Company-1's online networks and steal over $400 million dollars' worth of virtual currency from Victim Company-1.

### *Defendant's Additional SIM Swap Activity*

HERNANDEZ engaged in additional SIM swap-related activity while part of the Powell

Conspiracy. Specifically, while in El Paso, Texas, she was involved in the SIM swap of a mobile phone number assigned to "Victim-2." Other Powell Co-conspirators provided HERNANDEZ with a fraudulent identification card in the name of Victim-2 but bearing HERNANDEZ's photograph. HERNANDEZ then used this card to impersonate Victim-2 at a separate mobile service provider store approximately 12 miles from where HERNANDEZ and her co-conspirators had successfully executed the SIM swap of Victim-1's account. HERNANDEZ successfully executed the SIM swap of Victim-2's mobile phone number. Powell Co-conspirators then used security codes sent to Victim-2's mobile phone number to steal approximately $592,000 in virtual currency from Victim-2.

After engaging in this criminal activity in El Paso, Texas, HERNANDEZ traveled to New Mexico with Powell Co-conspirators. HERNANDEZ was present for additional SIM swap-related activity in New Mexico.

When she joined the Powell Conspiracy, HERNANDEZ knew the purpose of the Powell Conspiracy was to impersonate victims, gain access to victims' mobile telephone accounts to access their online accounts and steal funds, data, and/or PII from the victims. HERNANDEZ performed SIM swaps with Powell Co-conspirators for the purpose of receiving compensation for her participation. HERNANDEZ knew that she did not have authority to use fraudulent identification documents bearing her photograph but with victim PII when performing SIM swaps. HERNANDEZ knew that the fraudulent identification documents were being used in connection with felony violations enumerated in Title 18, United States Code, 1028A(c), including, but not limited to, a conspiracy to commit wire fraud in connection with online victim accounts.

In all, HERNANDEZ traveled to retail stores in multiple states, including Utah, Colorado,

New Mexico, and Texas, for the purpose of conducting, or attempting to conduct, SIM swaps. HERNANDEZ personally received approximately $2,500 for performing SIM swaps while she was a part of the Powell Conspiracy, and personally participated in SIM swaps impacting more than 10 victims. HERNANDEZ agrees that it was reasonably foreseeable to her that the conspiracy would result in causing at least $1,500,000 in pecuniary harm to at least those 10 victims.

                          Respectfully Submitted

                          MATTHEW M. GRAVES
                          United States Attorney

By: _____
      Kevin Rosenberg
      Alexandra Hughes
      Assistant United States Attorneys

By: _____
      Jessica Peck
      Aurora Fagan
      Trial Attorneys
      Computer Crime and Intellectual Property Section
      U.S. Department of Justice

**DEFENDANT'S ACKNOWLEDGMENT**

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorneys, Carmen Hernandez, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 5/15/24

_____
Emily Hernandez

**ATTORNEY'S ACKNOWLEDGMENT**

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with her fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 5/15/24

_____
Carmen Hernandez, Esq.
Counsel for Defendant

9